## HALL V. ROCKWELL.

This court reviews a cause upon the record presented here, and is not concerned with the process of reasoning through which the specific results may have been reached by the lower court.

*Appeal from District Court of Jefferson County.*

PETITION for rehearing in *Hall v. Linn*, Rockwell having been substituted for Linn. The opinion in *Hall v. Linn* is reported at page 264, *post*.

Messrs. WELLS, MACON and McNEAL and R. S. MORRISON, for appellant.

Mr. L. C. ROCKWELL and Messrs. TELLER and ORAHOOD, for appellee.

BY THE COURT. Counsel, in their elaborate brief upon this rehearing, restate and reargue the proposition that no motion for a new trial was necessary in this case. They proceed upon the hypothesis that we held in the opinion filed: First, that a formal, technical motion of this kind was necessary to a consideration of the cause upon the evidence; second, that their motion for judgment *non obstante*, so called, was not a sufficient compliance with this requirement; third, that for this reason we declined to consider whether or not the evidence sustained the findings of the jury; and fourth, that if we would examine the testimony for this purpose, we would "not only have no difficulty in arriving at a different conclusion from that reached by the jury, but would be unable to find support in the evidence for their verdict."

If counsel will re-read the opinion, they will discover our conclusion to be that in chancery cases, where the aid of juries is invoked, the motion for a decree contrary to their findings answers the purpose of the formal motion for a new trial, so far as a review of such findings is concerned, as "the chancellor is thus asked to retry the issues himself upon the evidence, and render findings in

conflict with those of the jury." They will also learn
that their cause was not in the slightest degree preju-
diced by any technical view of their motion; that we did
not deny its sufficiency as an application for a retrial by
the court; that we *did* examine the evidence, and, upon
full consideration thereof, determined that it amply sup-
ported the conclusions of the jury. The following lan-
guage on this subject is employed in the opinion: "A
careful and laborious examination of the entire record
has led us to the conclusion that the evidence, though
voluminous and conflicting, sustains the findings of the
jury." Notwithstanding this fact, however, we have
again carefully re-examined the evidence upon the re-
hearing, and are still unable to agree with counsel as to
its insufficiency.

Another misconception of counsel relates to the plead-
ings. They assume, if we correctly understand them,
that while the cause was tried in the court below exclu-
sively upon the first amended count of the complaint, we
sustained the judgment upon the averments of the orig-
inal complaint itself. How this conclusion could be
reached in view of what the opinion contains is a mystery
which we shall make no effort to solve. The judgment
was here affirmed upon the so-called first additional count
on which plaintiff elected to try the cause, it being a
complete complaint independent of the pleading to which
it purported to be an additional count.

As we viewed this amended complaint or count, it ap-
peared that "the legal effect of the matters averred
therein and in the original pleading was the same, so far
as the nature and foundation of the suit were concerned."
And it may be added that, by this construction, we were
in accord with the views of counsel, who now ask a re-
hearing. The burden of their former argument upon
this subject was that the pleading in question substan-
tially averred an assignment, but utterly failed to show
a mortgage. Again, counsel say that the court below

tried this cause upon the theory that the amended complaint set up a mortgage; while this court holds it to have averred an express trust, arising through an assignment for the benefit of creditors; and that for this reason the judgment should have been reversed.

The answer to this objection is, that this court reviews a case upon the record presented here; and if the complaint sufficiently avers a cause of action, and a preponderance of evidence supports the same, the judgment in accordance therewith will be affirmed, provided there is no material error in the instructions or rulings. A theory adopted by courts or counsel, not in harmony with the record, cannot influence our judgment. Appellate tribunals frequently affirm rulings made by inferior courts, while repudiating the reasons which there led to the rulings. The question is, were the *conclusions* of the court and jury below in accordance with the pleadings and evidence? If they were, the reviewing tribunal is not concerned with the process of reasoning through which the specific results may have been reached.

Counsel now assert that because the jury tried the entire cause and rendered a general verdict, the judgment should be reversed. Yet, in their brief upon the regular submission, they declare that, so far as the verdict was special, it was simply advisory to the court; so far as it was general, it was "a mere nullity." And again: "The finding of the jury on the general issue, that on the whole case, as it was submitted to them, was of no value. Against our objection, *that part of the* proceedings was a nullity; but the special findings were evidence in the cause, which, on the hearing, we had a right to attack or to admit as well sustained by the evidence, and still contend that no case was made." Counsel are hard to please; when we agree with them they find fault, and when we venture a non-concurrence in their views, they are still dissatisfied.

We concluded, as they apparently did, that the general

verdict in this case should be entirely disregarded; and we concluded, as they seemed to have done, that this fact did not nullify or destroy the special findings. We held, as they sought to have us hold, that these special findings were not binding upon the chancellor's conscience, but were advisory merely. And we considered the case just as we would have done had there been no general verdict. We then thought, and still think, that in these particulars counsel's former views were eminently correct. That it was irregular to submit, against counsel's objection, the whole issue to the jury, and require a general verdict from them, we freely admit, but in this irregularity alone we perceive no sufficient ground for a reversal. The decree is in harmony with the special findings, and both are supported by the pleadings and evidence.

The case of *Wolford v. Herrington*, 74 Pa. St. 311, was cited in our former opinion. Counsel say that the supreme court of that state have since "frankly admitted it (the former opinion) to have been erroneous and recalled it;" in support of this declaration they cite the decision of the same case upon a second review thereof, reported in 86 Pa. St. 39. There *is* a retraction in the latter decision. Mr. Justice Sharswood, who wrote both opinions, says: "I will frankly acknowledge that subsequent examination and reflection have satisfied me that I was in error in the position that Herrington would have been a trustee for Mrs. Wolford *even if she had no interest.*" This was the extent of the retraction; and the learned judge then proceeds to show how he was led to make the mistake. He says: "I was induced to form this conclusion by a course of reasoning which I now think fallacious, that because a long line of cases had settled that when at the execution of a writing the party to whom it was delivered has promised to execute another, and on the faith of which the first was executed, the refusal subsequently to perform the promise was a

fraud which would let in parol evidence of the trans-
action to reform the writing. I inferred that it would
also be a fraud under the statutes of frauds and per-
juries, and make the delinquent a trustee *ex malificio.*
*But these cases are inapplicable.*" Thus Judge Shars-
wood candidly admits that he arrived at an incorrect
legal conclusion from the erroneous application of the
principle announced in a certain class of cases. Had he
paused here there might be a possible doubt as to how far
his change of views qualified the former opinion. But
he immediately goes on to demonstrate that Mrs. Wol-
ford *did have an interest in the premises* bid off by Her-
rington at the sheriff's sale; and then he proceeds to
reverse the case in her favor, basing his reversal upon
the following doctrine, and further facts and principles
thereafter stated: "Where one *having any interest* (ex-
cept the defendant in the execution) is induced to confide
in the verbal promises of another, that he will purchase
for the benefit of the former at the sheriff's sale, and in
pursuance of this allows him to become the holder of
the legal title, a subsequent denial by the latter is such a
fraud as will convert the purchaser into a trustee *ex
malificio.* * * * She spoke of having a writing drawn
setting forth the agreement. He said he would have
his lawyer draw one and send it to her. A writing was
drawn. Wightman, a friend of Mrs. Wolford, asked
him at the sale to sign it; he said, ' wait till I bid it off,
then I will sign it.' After the sale he was again asked
for the writing. He said, ' wait till I get the deed, then
I will sign it.' After he got the deed he was asked sev-
eral times to do so, but refused. * * * The plaintiff
was entitled to an unqualified affirmance of the first, sec-
ond, third and sixth points."

The *points* mentioned were what we term instructions.
They were prayed by plaintiff's counsel. The first and
second were refused; the third and sixth were qualified
by the court, and as qualified given to the jury. In all

but the first as asked, Herrington's promise to reduce the trust agreement to writing, and subsequent refusal to do so, are prominent and material elements.

Upon a critical examination of the opinion in 86 Pa. St., it is found, therefore, to reaffirm that in the seventy-fourth volume of the same reports, in so far as the questions to which we cited the latter are concerned. But it will be seen by reference to the opinion, that we do not, in the case before us, open the door to parol evidence so widely as do the Pennsylvania cases referred to.

Upon the main question in this case, viz., the admissibility of parol proofs of the trust notwithstanding the statute of frauds, we now have nothing further to say. If the transaction from which this litigation sprung was as Mr. Hall would have us believe, we most sincerely deplore the disastrous consequences to him. But in view of the case as it appears in the record, we are unable to reach any other or different conclusion from that already announced.

The rehearing is accordingly denied.

*Rehearing denied.*